**FILED**
**Nov 01, 2018**
**01:24 PM(ET)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT KNOXVILLE

| | |
|---|---|
| **MELVIN DANIELS,** | ) **Docket No. 2018-03-0072** |
| **Employee,** | ) |
| **v.** | ) |
| **DANIELS FARMS,** | ) |
| **Employer,** | ) |
| **TRAVELERS PROPERTY** | ) |
| **CASUALTY CO. OF AMERICA,** | ) **State File No. 86263-2017** |
| **Carrier,** | ) |
| **And** | ) |
| **ABIGAIL HUDGENS, Administrator** | ) |
| **of the BUREAU OF WORKERS'** | ) |
| **COMPENSATION, and** | ) **Judge Pamela B. Johnson** |
| **SUBSEQUENT INJURY FUND.** | ) |

## EXPEDITED HEARING ORDER
## DENYING TEMPORARY DISABILITY BENEFITS

This matter came before the Court for an Expedited Hearing on October 19, 2018. The central issue is whether Melvin Daniels demonstrated he is likely to prevail at a hearing on the merits that he is entitled to temporary disability benefits. For the reasons below, the Court holds he did not and denies his claim for these benefits at this time.

### History of Claim

Daniels Farms is a family farm located in Harrogate, Tennessee. It began operations following the Revolutionary War and currently farms three thousand acres. Mr. Daniels is a part owner and working supervisor of Daniels Farms, which he defines as a "manager/ overseer/ operator." He is not paid wages or a salary but receives benefits from Daniels Farms.

On October 19, 2017, an air-conditioning pressure switch exploded while Mr. Daniels drove one of the farm's tractors. An air vent hit him in the head and right eye,

1

and the air-conditioner refrigerant saturated the cab where he was confined. As Mr. Daniels attempted to descend from the cab, his overalls caught on a seatbelt holder, causing him to lose his balance and fall. He struck his head on the tractor tire and fell to the ground, suffering additional injuries to his legs and left shoulder. Due to the refrigerant exposure, Mr. Daniels became nauseated, suffered breathing problems and dizziness, and sustained chemical burns to his face. He also suffered from lightheadedness, agitation, lethargy, loss of sensation and memory, and depression.

Mr. Daniels received authorized treatment with Dr. Michael McCollum for his legs and Dr. Phillip McDowell for his left shoulder. Dr. McDowell performed a left rotator cuff repair in March 2018. Mr. Daniels submitted no medical records from his authorized treating physicians but asserted that his treating physicians have not released him nor placed him at maximum medical improvement (MMI).

On December 17, 2017, Dr. C.M. Salekin evaluated Mr. Daniels at his attorney's request. Dr. Salekin diagnosed left C6 and C7 radiculopathies, left shoulder arthopathy, bilateral knee injuries, insomnia-induced somatic pain leading to excessive daytime sleepiness and fatigue, chemical burns to both eyes, and compromised lung function both restrictive and obstructive. He placed Mr. Daniels at MMI for his eyes and lungs as of the date of his examination and assigned a partial medical impairment of 32% to the whole person. Dr. Salekin noted that an ophthalmologist should complete impairments for the blurred vision, and he cannot assess impairments for the neck, bilateral knees, and left shoulder without MRIs of those areas. He determined Mr. Daniels's work incident was more likely than not primarily responsible for his injuries but noted the work incident aggravated his pre-existing right knee injury. Dr. Salekin noted that, due to the injury, he took Mr. Daniels completely off work from October 19, 2017, through the date of his examination. He also assigned permanent restrictions of no overhead reaching with the left arm and no pushing, pulling or lifting more than ten pounds, and he recommended that Mr. Daniels avoid frequent knee bending.

While receiving authorized treatment for his work injury, Mr. Daniels requested temporary disability benefits, which Daniels Farms's carrier denied. He asserted he was unable to work full time on a sustained basis since his work injury. He acknowledged that he was not paid a salary at the time of his injury but agreed that Daniels Farms paid the following:

1. Payment of his annual mortgage of $5,600 per year, or $466 per month;

2. Use of a truck valued at approximately $500 per month;

3. Payment of his household utilities of approximately $350 per month;

4. Use of a grocery allowance of $1,200 per month;

2

5. Unspecified payments for truck fuel, clothes, and miscellaneous personal necessities; and

6. Unspecified "farm profits" deposited into his personal checking account.

Mr. Daniels asserted that theses allowances and paid expenses equated to an average weekly wage of $957.69 and a workers' compensation rate of $638.39. Alternatively, Mr. Daniels argued he was entitled to a weekly compensation rate based on the earnings of a similarly-situated supervisor/tobacco grower who earned $25 per hour and received furnished housing, utilities, unlimited internet, a personal vehicle, fuel and insurance. He claimed an average weekly wage of $1,000 using the similarly-situated employee's wages. As another alternative, he claimed he is entitled to the minimum weekly compensation rate.

Mr. Daniels admitted he continued to receive the benefits and allowances outlined above. His wife, Michelle Daniels, the bookkeeper for Daniels Farms, confirmed the continuation of Mr. Daniels's benefits through the date of the hearing.

Mr. Daniels testified that he was unable to perform the more physical requirements of his job. Instead, he mainly observed cattle and fence lines from his truck or using a drone, supervised others, and offered advice and guidance to his daughter, Whitney Daniels, who has been in training to take over the farm since 2014. Mr. Daniels and his wife testified that the farm lost profits following his injury because he was unable to do the physical tasks of his job. Both admitted, however, a major tobacco crop was destroyed when a utility company over-sprayed along the utility lines, resulting in a significant profit loss.

Since the work injury, Mr. Daniels admitted he ran for mayor and attended two candidate forums. However, he testified his daughter campaigned for him, and he never intended to take office. He also admitted that he suffered a later work injury on the farm in May 2018, which is the subject of a separate claim.

### Findings of Fact and Conclusions of Law

At an Expedited Hearing, Mr. Daniels must present sufficient evidence demonstrating that he is likely to prevail at a hearing on the merits. *See McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Mar. 27, 2015).

The issue is whether Mr. Daniels is entitled to temporary disability benefits. To receive temporary total disability benefits, an injured employee must prove (1) total disability from working as the result of a compensable injury; (2) a causal connection

3

between the injury and the inability to work; and (3) the duration of the period of disability. *Shepherd v. Haren Constr. Co., Inc.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 15, at *13 (Mar. 30, 2016). As the name implies, an injured employee is entitled to temporary partial disability benefits if his temporary disability is not total. *See* Tenn. Code Ann. § 50-6-207(1)-(2) (2018). Specifically, "[t]emporary partial disability refers to the time, if any, during which the injured employee is able to resume some gainful employment but has not reached maximum recovery." *Frye v. Vincent Printing Co.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 34, at *15-16 (Aug. 2, 2016.)

Here, Mr. Daniels admitted he did not receive a salary or wages at the time of his injury. Instead, he received benefits and allowances. Following his work injury, he continued to receive the same benefits and allowances but claimed the farm suffered a loss in profits due to his injury, which resulted in no "money in his pocket." He claimed he was unable to work full time on a sustained basis but admitted he worked some and, in fact, subsequently suffered a new work injury. He did not demonstrate the extent of the profit loss due to his work injury. Moreover, he did not introduce evidence that Daniels Farms hired someone to perform the physical components of his job, but he simply provided the wages of someone already employed by Daniels Farms as of the date of his injury.

In addition, although Dr. Salekin indicated Mr. Daniels was totally disabled from working after the injury, Mr. Daniels confirmed he was able to continue to observe, oversee, and provide advice and instruction despite the fact that he was unable to do the more physical tasks. The Court concludes Mr. Daniels failed to demonstrate that he was temporarily totally or partially disabled from working due to his injury.

Additionally, the Court finds that Daniels Farms continued to provide Mr. Daniels the same benefits and allowances he received before the work injury. The continuation of these benefits and allowances is akin to that of an employer who continues to pay an injured employee his or her full wages instead of temporary disability benefits. In these circumstances, he is not entitled to temporary disability benefits. Accordingly, the Court denies his claim for these benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Daniels's claim against Daniels Farms and its workers' compensation carrier for the requested benefits is denied at this time.

2. This matter is set for a **Scheduling Hearing** on **February 14, 2019**, at **9:30 a.m. Eastern Time**. The parties must call 865-594-0091 or 855-543-5041 toll-free to participate in the Scheduling Hearing. Failure to appear by telephone may result in a determination of the issues without the party's participation.

4

**ENTERED November 1, 2018.**

PAMELA B. JOHNSON, JUDGE
Court of Workers' Compensation Claims

## APPENDIX

Technical Record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Employee's Submissions
4. Employer Submissions
5. Fund Submissions
6. Show Cause Order
7. Request for Scheduling Hearing
8. Order Setting Status Conference
9. Employer's Notice of Filing – Notice of Controversy
10. Amended Petition for Benefit for Determination
11. Request for Expedited Hearing
12. Employee's Affidavit in Support of Request for Expedited Hearing
13. Employee's Notice of Intent to Use Standard Form Medical Report in Lieu of Deposition
14. Employer's Objection to Request for Expedited Hearing
15. Employer's Witness and Exhibit List
16. Employer's Pre-Hearing Statement
17. Employee's Notice of Filing of Deposition Transcripts
18. Employee's Pre-Hearing Statement

The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

Exhibits:
1. Deposition of Melvin Daniels
2. Deposition of Michelle Daniels
3. Deposition of Whitney Daniels
4. First Report of Work Injury
5. Standard Form Medical Report for Industrial Injuries, Form C-32

6. Affidavit of Melvin Clark
7. W52 and Additional Expenses – Jonatan Torrescano Jimenez

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on November 1, 2018.

| Name | Certified Mail | Fax | Email | Service sent to: |
|------|----------------|-----|-------|------------------|
| David H. Dunaway, Employee's Attorney | | | X | dhdunaway@aol.com |
| Richard Clark, Employer's Attorney | | | X | rclark@eraclides.com |
| Lindsay N. Hall, Fund's Attorney | | | X | Lindsay.N.Hall@tn.gov |

PENNY SHRUM, Court Clerk
WC.CourtClerk@tn.gov

6